UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
K.A.R.,

Petitioner,

- against -

KENNETH GENALO, *in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement, et al.*,

Respondents.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-6645 (PKC)

PAMELA K. CHEN, United States District Judge:

On October 15, 2026, K.A.R.[1] filed a petition for a writ of habeas corpus to challenge the lawfulness of his detention stemming from his arrest on August 20, 2026 by United States Immigration and Customs Enforcement ("ICE"). For the following reasons, the Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately and no later than 5:00 p.m. ET on Thursday, October 29, 2026, unless Respondents file a motion with the Court no later than 11:00 a.m. ET on Thursday, October 29, 2026 requesting that the Court hold a bond hearing at which Respondents will bear the burden to demonstrate that Petitioner presents a risk of flight.

## BACKGROUND

Petitioner is a native and citizen of Jamaica. (Dkt. 1, ¶ 23.) On September 18, 2021, he entered the United States on a B-2 non-immigrant visa, which entitled him to remain in the United States until March 17, 2022. (Dkt. 11, ¶ 2.)

---

[1] The Court refers to Petitioner by his initials pursuant to the Court's October 16, 2026 order granting Petitioner's motion to proceed pseudonymously. (10/16/2026 Dkt. Order.)

On August 20, 2026, at approximately 1:30 p.m., an ICE officer issued a Form I-200 Warrant for Arrest of Alien to arrest Petitioner, (*id.* ¶ 5), after the Transportation Security Administration "informed ICE that Petitioner was scheduled on an upcoming flight at LaGuardia Airport departing from New York to Chicago," (*id.* ¶ 4). At approximately 3:00 p.m., ICE officers approached Petitioner at LaGuardia Airport, confirmed his identity, and arrested him pursuant to Section 1226(a) of the Immigration and Nationality Act ("INA"). (*See id.* ¶ 6 (citing 8 U.S.C. § 1226(a)).) Later that day, the ICE officers transported Petitioner to 26 Federal Plaza, New York, New York, for processing. (*Id.*) During processing, an ICE officer issued and served Petitioner with a Form I-862 Notice to Appear ("NTA"), "charging him with removability pursuant to INA § 237(a)(1)(B), as an alien admitted to the United States, but removable for remaining in the United States for a time longer than permitted." (Dkts. 10, at 11; 11, ¶ 8.)[2] Another ICE officer conducted an initial custody determination and concluded that Petitioner would be detained by the United States Department of Homeland Security ("DHS") pending a final administrative determination. (Dkt. 14-3.) The officers then transported Petitioner to the Delaney Detention Hall in Newark, New Jersey. (Dkt. 11, ¶ 10.) On September 1, 2026, ICE transferred Petitioner to the Metropolitan Detention Center in Brooklyn, New York. (Dkt. 11, ¶ 12.)

On September 3, 2026, Petitioner filed a motion for a custody re-determination hearing ("bond hearing") before an immigration judge ("IJ"). (*Id.* ¶ 14.) On September 11, 2026, an IJ held a bond hearing at the Varick Immigration Court in New York, New York, (Dkt. 1, ¶ 7), and concluded that Petitioner "met his burden to establish that he does not pose a danger to the

---

[2] Petitioner argues that his arrest was unlawful under the INA because ICE officers arrested him before issuing an NTA. (*See* Dkt. 1, ¶¶ 38–52.) Respondents do not dispute this sequence of events but argue that it was not "improper," (Dkt. 10, at 11). Because the Court grants the Petition on the basis of Petitioner's due process claim, Petitioner's other claims, including that the post-arrest issuance of the NTA violated the INA, are now moot and unnecessary to resolve.

community" but failed to "me[et] his burden of proving" that he does not present a risk of flight, (Dkt. 1-5, at 2–3). The IJ held that "no amount of bond can mitigate" the risk of flight, so the IJ denied Petitioner's request for a change in custody status. (*Id.* at 3–4.) Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"); that appeal remains pending. (Dkt. 10, at 2.)

## DISCUSSION

### I. Jurisdiction

Respondents argue that the Court lacks jurisdiction over Petitioner's claim that the Due Process Clause of the Fifth Amendment entitled him to a bond hearing in which the Government bore the burden of proof. (Dkt. 10, at 3–7.) Respondents cite Section 1226(e) of the INA, which prohibits judicial review of "[t]he Attorney General's discretionary judgment . . . regarding the detention of any alien," (*id.* at 4 (citing 8 U.S.C. § 1226(e))), but concede that "Section 1226(e) 'does not' . . . 'limit habeas jurisdiction over constitutional claims or questions of law.'" (*Id.* (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)) (internal citation omitted).) They suggest that Petitioner "ask[s] this Court to reweigh the evidence that was before the IJ in the hopes of obtaining a more favorable outcome," which Section 1226(e) prohibits, while "mask[ing] his request as a constitutional claim" to overcome the jurisdictional hurdle. (*Id.* at 3.)

While the Court agrees that it lacks jurisdiction to "review the IJ's discretionary decision," (*id.* (citing *Defaz Achi v. Maldonado*, No. 26-CV-05533 (OEM), 2026 WL 3121334, at *6 (E.D.N.Y. Oct. 19, 2026))), the constitutionality of the IJ's allocation of the burden of proof "is not a matter of 'discretionary judgment.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). *See Velasco Lopez*, 978 F.3d at 850 (citing *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the discretionary process itself was constitutionally flawed," including the petitioner's claim that the Due Process Clause entitled him to a burden-shifted bond hearing, "are

cognizable in federal court on habeas because they fit comfortably within the scope of [Section] 2241."); *Mendoza v. Noem*, No. 26-CV-1260 (LJL), 2026 WL 1470652, at *4 (S.D.N.Y. May 26, 2026) (citations omitted) ("By its plain language, [Section 1226(e)] bars review only of an IJ's 'discretionary' determinations, such as an IJ's weighing of different pieces of evidence; it does not apply to claims that the IJ failed to comply with constitutionally-mandated procedures in reaching those determinations."); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (concluding that Section 1226(e) did not divest the court of jurisdiction over petitioner's claim that the IJ's burden-of-proof allocation violated the Fifth Amendment Due Process Clause, reasoning that it is not a "challenge [of] the IJ's ultimate exercise of discretion"). Accordingly, Petitioner's due process claim "falls outside of the scope of [Section] 1226(e)," and the Court may "consider the merits of [his] claim[]." *Jennings*, 583 U.S. at 296.

## II. Administrative Exhaustion

Respondents also argue that Petitioner must "wait[] for the BIA to review his appeal" before the Court can adjudicate his Petition. (Dkt. 10, at 12.) The Court disagrees.

"There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus," *Hernandez v. Maldonado*, No. 26-CV-5584 (RPK), 2026 WL 2983493, at *1 (E.D.N.Y. Oct. 5, 2026), and, even as to the "judicially created exhaustion requirement," *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014), Respondents concede there are "recognized exceptions," (Dkt. 10, at 7), including when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile and (4) in certain instances a plaintiff has raised a substantial constitutional question," *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003) (citing *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)). Here, requiring Petitioner to exhaust by waiting

for the BIA to resolve his appeal of the IJ's detention decision would be futile. First, the BIA cannot address Petitioner's due process claim that it is the Government that bears the burden of proving that Petitioner presents a risk of flight or poses a danger before detaining him under Section 1226(a) because "[c]onstitutional claims lie outside the BIA's jurisdiction." *J.C.G. v. Genalo*, No. 24-CV-8755 (JLR), 2025 WL 88831, at *5 (S.D.N.Y. Jan. 14, 2025) (citing *United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002)) (concluding that exhaustion "would be futile" as to petitioner's due process claim for a burden-shifted bond hearing); *see also O.F.C. v. Decker*, No. 22-CV-2255 (JPC), 2022 WL 4448728, at *4 (S.D.N.Y. Sep. 12, 2022) ("[O]n appeal the BIA could not have reversed the IJ's decision denying bond on the grounds that the IJ's allocation of the burden of proof was unconstitutional[.]"). Second, Petitioner's BIA appeal will inevitably result in an affirmance of the IJ's allocation of the burden of proof on the Government. *See O.F.C.*, 2022 WL 4448728, at *5 (citing *Washington v. Barr*, 925 F.3d 109, 118 (2d. Cir. 2019) ("Exhaustion is futile if 'the agency has already determined the issue.'"); *id.* ("[The BIA] has had tens of thousands of opportunities to reconsider whether its allocation of the burden of proof in bond hearings violated the requirements of administrative law, and on none of those occasions has it chosen to do so . . . [I]t is hard to imagine a less ambiguous example of an agency's having already made up its mind than the BIA's consistent and lengthy record of allocating the burden of proof to detained immigrants."); *Mathieu v. Dep't of Homeland Sec.*, No. 26-CV-4630 (PAE), 2026 WL 1747084, at *3 n.4 (S.D.N.Y. June 17, 2026) (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)) ("BIA precedent—which . . . binds IJs—holds that the burden of proof at bond hearings is properly placed on noncitizens."); *P.M. v. Joyce*, No. 22-CV-6321 (VEC), 2023 WL 2401458, at *1 n.2 (S.D.N.Y. Mar. 8, 2023) (collecting cases) ("The BIA has repeatedly affirmed

its position that detainees bear the burden of proof during a bond hearing pursuant to [S]ection 1226(a).").

Accordingly, the Court excuses Petitioner's non-exhaustion of administrative remedies.

**III. Due Process**

Petitioner claims that the bond hearing he received in front of the IJ violated his Fifth Amendment due process rights in so far as the IJ placed the burden on him, not Respondents, to demonstrate that he does *not* present a risk of flight. (Dkt. 1, ¶¶ 60–64, 126–133.) The fact that the IJ placed the burden on Petitioner at the hearing is not disputed, (Dkt. 10, at 6), so the only question is whether that burden-shifted framework was improper; the Court finds that it was.

Upon arresting an alien under Section 1226(a), an ICE officer makes an initial custody determination: ICE "may continue to detain the arrested alien," 8 U.S.C. § 1226(a)(1), or it "may release the alien" on bond or conditional parole, 8 U.S.C. § 1226(a)(2), if the alien "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If not released, the alien may request pursuant to Section 1226(a) that an immigration judge review the ICE officer's initial custody determination and hold a bond hearing on the alien's potential risk of flight and danger to the community. *See* 8 C.F.R. § 236.1(d)(1).

Based on the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), this and other courts have found that the Due Process Clause of the Fifth Amendment requires the Government to bear the burden of proof at the bond hearing to show that the noncitizen presents a risk of flight or poses a danger. *See, e.g.*, *Ladino Rodriguez v. Maldonado*, No. 26-CV-6615 (PKC), 2026 WL 3181471, at *5 (E.D.N.Y. Oct. 23, 2026) (collecting cases) ("[T]he Court joins the numerous district courts in this Circuit that have found that due process requires the Government to bear the burden proof at noncitizens' Section 1226(a) bond hearing to show that

they present a risk of flight or pose a danger."). In *Mathews*, the Supreme Court set forth three factors for courts to consider in determining "when, under our constitutional system, judicial-type procedures must be imposed upon administrative action," *id*. at 348:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*Id*. at 335.

The first *Mathews* factor "cuts sharply in [Petitioner's] favor," *Velasco Lopez*, 978 F.3d at 852. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "For this reason, 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections.'" *Hernandez-Lara*, 10 F.4th at 28 (citing *Addington v. Texas*, 441 U.S. 418, 425 (1979)).

As to the second *Mathews* factor, the risk of erroneous deprivation is high when noncitizens, like Petitioner, bear the burden of proving at a Section 1226(a) bond hearing that they do not present a risk of flight or pose a danger. First, "proving a negative . . . can often be more difficult than proving a cause for concern. Requiring that detainees . . . prove that they are *not* a danger and *not* a flight risk—after the government has enjoyed a presumption that detention is necessary—presents too great a risk of an erroneous deprivation of liberty." *Black v. Decker*, 103 F.4th 133, 156 (2d Cir. 2024). Second, owing to their confinement, "detainees are disadvantaged by a lack of information when the burden is placed upon them to prove that they are not dangerous or a flight risk," *Singh v. Francis*, No. 26-CV-0344 (OEM), 2026 WL 507890, at *5 (E.D.N.Y. Feb. 24, 2026), while, conversely, "the Government ha[s] substantial resources to deploy" in this

context. *Velasco Lopez*, 978 F.3d at 852. *See Hernandez-Lara*, 10 F.4th at 30 (describing how "detained individuals will likely experience difficulty in gathering evidence on their own behalf"). Accordingly, this factor also weighs in Petitioner's favor.

The final *Mathews* factor is Respondents' interests, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. In this context, those interests are "ensuring that noncitizens do not abscond and ensuring they do not commit crimes" while on bond. *Velasco Lopez*, 978 F.3d at 854 (citation modified). "However, the Government [does not have] an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. On the contrary, shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* If a noncitizen does, in fact, present a risk of flight, then in a properly conducted bond hearing, the Government would have had the opportunity to demonstrate that fact to an immigration judge. Whereas placing the burden on the Government neither precludes nor hampers its ability to detain individuals who actually present a risk of flight or pose a danger. Nor is conducting constitutionally compliant bond hearings likely "to impose an undue administrative or financial burden on the Government, because the Government 'is generally in a better position than a detained noncitizen to gather and present evidence relevant to the bond determination.'" *Mathieu*, 2026 WL 1747084, at *5 (citation omitted). Thus, this factor too weighs in Petitioner's favor.

The Due Process Clause of the Fifth Amendment entitles noncitizens who, like Petitioner, are detained pursuant to Section 1226(a), to a bond hearing where the Government bears the burden of proof. *See, e.g.*, *J.C.G.*, 2025 WL 88831, at *7 (citing *Banegas v. Decker*, No. 21-CV-02359

(VEC), 2021 WL 1852000, at *2 (S.D.N.Y. May 7, 2021) (collecting cases)) ("Numerous courts in this District have held that 'where, as here, the Government seeks to detain a noncitizen pending removal pursuant to Section 1226(a), the Fifth Amendment Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that such detention is justified.'"). As such, Petitioner's bond hearing—which shifted the burden onto him—was constitutionally inadequate.

**IV. Remedy**

A writ of habeas corpus "is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008) (citations omitted); *see also Yao v. Almodovar*, 813 F. Supp. 3d 461, 477 (S.D.N.Y. 2025) ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." (collecting cases ordering same remedy)); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in light of the constitutional violations suffered). Here, as discussed above, Petitioner's due process rights have been violated as a result of his detention without a constitutionally adequate bond hearing. Accordingly, the Court finds it appropriate and necessary to order Petitioner's immediate release. *See, e.g.*, *Kumar v. Maldonado*, No. 26-CV-5326 (NRM), 2026 WL 2606756, at *6 (E.D.N.Y. Sep. 3, 2026) (ordering release where petitioner's due process rights were violated as a result of bond hearing where the burden was improperly placed on the petitioner).

However, the Court will grant Respondents the opportunity to make a showing as to risk of flight should they believe they can make such a showing. In that event, Respondents can request

that the Court hold a bond hearing at which they will bear the burden of proving Petitioner presents a risk of flight, and the Court will consider alternatives to detention. *See J.R.U. v. Genalo*, No. 26-CV-4332 (LJL), 2026 WL 1864975, at *18 (S.D.N.Y. June 29, 2026) (granting petition due to inadequate bond hearing but allowing the Government the opportunity to present to the court evidence and argument to support the petitioner's continued detention since the Government had not explicitly conceded that it could not prove petitioner presented a risk of flight); *cf. Sosa v. Warden of Orange Cnty. Corr.*, No. 26-CV-2304 (DEH), 2026 WL 1803814, at *8 (S.D.N.Y. June 23, 2026) (ordering release where, "having twice conceded that [petitioner] is not a danger to the community or a flight risk, the Government could not possibly carry its burden at a bond hearing to show that continued detention is warranted").

## CONCLUSION

For the foregoing reasons, K.A.R.'s Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Dkt. 1), is GRANTED. Petitioner's other arguments, including that the post-arrest issuance of the NTA violated the INA, are now moot and unnecessary to resolve.

Respondents are hereby ORDERED to release K.A.R. immediately, and no later than 5:00 p.m. ET on Thursday, October 29, 2026, unless Respondents file a motion with the Court no later than 11:00 a.m. ET on Thursday, October 29, 2026, requesting a bond hearing. If Respondents make such a request, the Court will hold the bond hearing at 2:00 p.m. ET on Thursday, October 29, 2026 in Courtroom 4F North. Otherwise, Respondents shall release Petitioner subject to the conditions under which he was at liberty before he was detained, without any additional constraints on his liberty, including, but not limited to, electronic or GPS monitoring. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.

Respondents shall confirm compliance with these directives in a filing on the docket no later than 12:00 p.m. ET on Friday, October 30, 2026.

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court.

Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain Petitioner. Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies lawful detention. The Court retains jurisdiction to review any subsequent arrest or detention of Petitioner by Respondents to ensure compliance with this Memorandum and Order.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action. 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 28, 2026
Brooklyn, New York